UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRI E. DAVIS,

      Plaintiff,                        Civil Action No. 16-11601

v.                               HON.  MARIANNE O. BATTANI
                                  U.S. District Judge
                                  HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Terri E. Davis ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Docket #15] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #14] be DENIED.

## PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits ("DIB") on June 18, 2013, alleging disability as of March 5, 2013 (Tr. 148).   After the initial denial of the claim, Plaintiff

requested an administrative hearing, held on February 4, 2015 in Baltimore, Maryland (Tr. 16). Administrative Law Judge ("ALJ") Yvette N. Diamond presided. Plaintiff, represented by attorney Richard F. Samoray, testified by teleconference in Toledo, Ohio (Tr. 20-39).[1] Vocational Expert ("VE") David Couch also testified (Tr. 39-46). On February 23, 2015, ALJ Diamond found that Plaintiff was not disabled (Tr. 64-73). On March 15, 2016, the Appeals Council denied review (Tr. 1-5). Plaintiff filed for judicial review of the final decision on May 4, 2016.

## BACKGROUND FACTS

According to her application for benefits, Plaintiff, born on June 7, 1952, was 62 when the ALJ issued her decision[2] (Tr. 73, 148). She completed a GED and received training as a medical assistant (Tr. 171). She worked previously as a credit counselor and telephone operator (Tr. 171). She alleges disability as a result of fibromyalgia, depression, anxiety, osteoarthritis of the knees, restless leg syndrome, Irritable Bowel Syndrome ("IBS"), Chronic Obstructive Pulmonary Disease ("COPD"), dyslipidemia, Gastroesophageal Reflux Disease ("GERD"), and Chronic Reflux Esophagitis (Tr. 170).

### A.    Plaintiff's Testimony

Plaintiff offered the follow testimony:

---

[1] Plaintiff resides in Monroe, Michigan, which is in the Eastern District of Michigan. However, the Social Security Office in Toledo, Ohio is the closest facility to Monroe with teleconferencing facilities.

[2] However, she testified that she was born June 7, 1954 (Tr. 20).

She stood 5' 4" and weighed 180 pounds (Tr. 20). She was married with four grown children and had grandchildren ranging in age from four months to 19 years (Tr. 21). She lived in a single-family dwelling with her husband (Tr. 21). She held a valid driver's license (Tr. 21). She had not worked since 2013 (Tr. 22). Between 2002 and 2013, she held the position of switchboard operator at a hospital (Tr. 23). The job required her to sit from most of her shift, use a computer, and lift up to five pounds (Tr. 24). She stopped working after running out of sick leave time although at the time of her departure, she still required time off to have a knee replacement (Tr. 24). She worked as a credit counselor between 1986 and 1997 (Tr. 25).

Plaintiff had not undergone surgery since a July, 2013 knee replacement (Tr. 25). At present, she saw her orthopedic surgeon only when she had "a problem" (Tr. 26). She currently saw a neurologist every three months (Tr. 26). She claimed that he had referred her for a consultative examination with a psychologist who diagnosed her with "early onset dementia" (Tr. 27). The consultative psychologist informed her that mental health counseling was unnecessary (Tr. 28). Her primary care physician prescribed medication for her but she saw him only on an "as needed" basis (Tr. 27).

Plaintiff was given a cane and walker following knee surgery but continued to use the cane periodically even after completing physical therapy (Tr. 28-29). She did not use tobacco, alcohol, or street drugs (Tr. 29-30). She was generally able to care for her personal needs (Tr. 30). Her grandchildren stayed with her occasionally (Tr. 31). Plaintiff was able

to perform household chores independently (Tr. 32). Her outdoor work was limited to occasionally sitting on the ground and planting flowers (Tr. 32). She was able to shop online and grocery shopped approximately once a month (Tr. 32-33). Her husband handled the finances since she had overdrawn her checking account (Tr. 33). She stretched daily and walked "in nice weather" on rare occasions (Tr. 33). She was able to walk for up to 15 minutes (Tr. 33). She and her husband went to the movies and ate out on a rare basis (Tr. 34). She attended church services twice a month, visited with family members, and went to see her mother regularly (Tr. 34). She drove her mother to doctors' appointments occasionally (Tr. 34). She went on vacation to an amusement park after between the time she stopped work in March, 2013 and the July, 2013 knee surgery but required the use of a wheelchair (Tr. 35). She enjoyed playing computer word games and reading magazines (Tr. 35). She spent up to three hours on the internet each day (Tr. 36). On a typical day, she arose at 10 a.m. and watched television until her medicine "kicked in" (Tr. 36). She would later make dinner and perform household chores (Tr. 36). She was unable to lift more than five pounds (Tr. 37).

In response to questioning by her attorney, Plaintiff reported sleep disturbances due to restless leg syndrome and back pain (Tr. 38). She typically took a two-hour nap during the day to make up for lost sleep (Tr. 38). Humid weather exacerbated asthma symptoms (Tr. 39).

**B.      Medical Evidence**

**1.   Treatment-Related Sources**

August, 2012 treating records note that Plaintiff exhibited normal cognitive abilities with a depressed mood (Tr. 520).   March 5, 2013 treating notes state that symptoms of depression had improved, but that she experienced "worsening symptoms of a knee injury" (Tr. 275, 321).   In March, 2013, Alan Sundheimer, M.D. stated that Plaintiff was unable to work between March 2, and March 10, 2013 (Tr. 502).   On March 15, 2013, Plaintiff was diagnosed with acute bronchitis (Tr. 272).   In April, 2013, Dr. Sundheimer stated that Plaintiff was unable to work between April 1, and April 28, 2013 due to an upper respiratory infection (Tr. 266-267, 499).   Dr. Sundheimer's notes state that Plaintiff reported reduced symptoms of depression and anxiety (Tr. 267).   He noted the ongoing conditions of osteoarthritis of the knee, restless leg syndrome, and fibromyalgia (Tr. 267).

In June, 2013, Dr. Sundheimer noted a normal respiratory rhythm and effort (Tr. 309, 492).   In July, 2013, pulmonary and sleep specialist testing records note a cough, asthma, and GERD (Tr. 291, 326).   She was prescribed bronchodilator treatment (Tr. 291).   Followup treating notes state that she experienced "significant improvement" in symptoms after beginning use of the bronchodilator (Tr. 640).   A chest x-ray was unremarkable (Tr. 305, 548).   The same month, Plaintiff underwent a left knee arthroplasty (Tr. 327-328, 345-346, 488, 542).   Post-operative imaging studies of the knee were unremarkable (Tr. 554).   Occupational therapy reports from two days after surgery showed full upper extremity

strength (Tr. 357).  Physical therapy records note no difficulty in sitting or performing upper extremity functions (Tr. 602).  Additional therapy records from the following month note Plaintiff's report that "everything [was] okay" (Tr. 612).  Her condition at the time of physical therapy discharge was deemed "good" (Tr. 622).  In September, 2013 orthopedic surgeon Bardley J. Morse, M.D. observed mild knee swelling but no instability (Tr. 378).  Plaintiff reported that her knee was "a little bit achy but doing better" (Tr. 378).  In October, 2013, Dr. Sundheimer told Plaintiff that her memory problems were "probably due to anxiety/depression and not early dementia" (Tr. 487).

In November, 2013, Plaintiff sought treatment for memory problems (Tr. 388).  Neurologist Ahmed B. Arshad, M.D. noted a normal gait (Tr. 397).  Plaintiff scored a "30" out of 30 on a memory test (Tr. 397).  Dr. Arshad opined that Plaintiff's reported memory problems were attributable to anxiety and depression (Tr. 397).  Dr. Morse's December, 2013 records note Plaintiff's report that her knee felt "fine" (Tr. 376).

In February, 2014, neuropsychologist Jennifer Simpkins-Bullock, Ph.D. performed a one-time neuropsychological evaluation in response to Plaintiff's report of short-term memory problems (Tr. 369).  Plaintiff noted that she had stopped working in March, 2013 due to knee problems (Tr. 371).  Dr. Sempkins-Bullock noted that intellectual testing showed good executive functioning (Tr. 372).  She found mild limitations in memory, noting that "depression/anxiety and chronic pain contribute to the inefficient mental processing" (Tr. 374).  She encouraged further diagnostic work-up to rule out dementia (Tr. 374-375).  The

following month, Dr. Arshad noted that Plaintiff scored a 30 out of 30 in memory testing and

that lab work and imaging studies, including an MRI of the brain, were unremarkable (Tr.

408, 421, 632).   The same month, Dr. Sundheimer noted that Plaintiff had "been doing well"

with asthma control (Tr. 480, 676).   May, 2014 nerve conduction studies of the lower

extremities were unremarkable (Tr. 414-415).   Dr. Arshad opined that "most, if not all of

patient's symptoms are associated with underlying anxiety" and that he did "not believe [she]

exhibits any symptoms of dementia . . ." (Tr. 426).   In July, 2014, Dr. Arshad found that

Plaintiff's "subjective cognitive impairment" was "related to" to her use of psychotropic

medication (Tr. 446).   Dr. Arshad's September, 2014 records show normal muscle bulk and

tone, 5/5 strength, and a normal gait and station (Tr. 453-454).   X-rays of the lumbar spine

taken the following month were negative for fracture (Tr. 461).

September, 2014 pulmonary records state that Plaintiff experienced "mild" obstructive

ventilatory defect (Tr. 648).   In October, 2014, Plaintiff reported "sudden onset of constant

episodes of left lower back pain" (Tr. 475).   Imaging studies of the lumbar spine showed

degenerative changes but were otherwise unremarkable (Tr. 655-656, 877-878).

### 2.   Non-treating Sources

On August 1, 2013, Gayle Oliver-Brannon, Ph.D. performed a consultative

psychological examination on behalf of the SSA, noting Plaintiff's report of anxiety,

depression, weight gain, and deteriorating health (Tr. 359).   Plaintiff alleged disability due

to "health and mood issues" (Tr. 359).   Plaintiff reported independence in self-care tasks,

household chores, cooking, and shopping (Tr. 359).  She stated that she required the use of a cane (Tr. 360).  Dr. Oliver-Brannon noted that Plaintiff was in contact reality with clear speech and did not exhibit psychotic symptoms (Tr. 360).  She exhibited a normal memory (Tr. 360).  Dr. Oliver-Brannon assigned Plaintiff a GAF of 48, noting the conditions of depression and anxiety, various physical conditions, and unemployment[3]  (Tr. 361).  She concluded that "[e]mployment does not seem to be a viable option in light of her health issues at this time . . ." (Tr. 362).

Later the same month, Dyan Hampton-Aitch, Ph.D. conducted a non-examining review of the mental health records on behalf of the SSA, concluding that the conditions of anxiety and depression were non-severe (Tr. 53-55).  The same month, Muhammad Mian, M.D. performed a non-examining review of the records pertaining to Plaintiff's physical conditions (Tr. 56-58).  He found that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 56).  He found that Plaintiff was limited to occasionally climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 56-57).  He found that Plaintiff should avoid concentrated exposure to airborne hazards but did not experience further environmental limitations (Tr. 57).

---

[3]

A GAF score of 41–50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job.  *Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (*4th ed.2000)("*DSM-IV-TR*"), 34.

### C.  The Vocational Expert

VE Couch characterized the Plaintiff's former job as a telephone operator as semiskilled and exertionally sedentary, both as described by Plaintiff and as generally performed in the national economy[4] (Tr. 40-41).  The ALJ then posed the following question to the VE, describing a hypothetical individual of Plaintiff's age, education, and work experience:

> [P]lease assume an individual who . . . . can lift and carry 20 pounds occasionally, 10 pounds frequently, stand or walk for six out of eight hours, sit for six out of eight hours.  Occasionally push and pull.  Occasionally climb, balance, stoop, kneel, crouch, and crawl.  Someone who may have no concentrated exposure to respiratory irritants, temperature extremes, or humidity.  Could such a person perform the claimant's past relevant work either as she actually performed it or as those occupations are generally performed in the national economy? (Tr. 41).

The VE stated that the above restrictions would not preclude Plaintiff's past relevant work as a telephone operator (Tr. 42).  He testified further that the need for a cane would not preclude the telephone operator position (Tr. 42).  However, the VE found that if the individual needed to stand on an unscheduled basis or, for even five minutes an hour (aside from 15-minute breaks every two hours and a 30-minute lunch break) the telephone operator

---

[4]20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;"  *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

position would be eliminated (Tr. 43-45).  He found that the need to miss more than one day

of work each month, or, being off-task for 20 percent or more of the workday would also

preclude the operator position (Tr. 43).   The VE stated that his testimony was based on both

the Dictionary of Occupational Titles ("DOT") and his own professional experience (Tr. 45-

46).

### D.   The ALJ's Decision

Citing Plaintiff's medical records, ALJ Diamond found that Plaintiff experienced the

severe impairments of fibromyalgia, osteoarthritis, restless leg syndrome, asthma, COPD, and

GERD, but that none of the conditions met or medically equaled one of the impairments

listed in 20 C.F.R. Part 404, Appendix 1 (Tr. 66, 68).   He found that the conditions of

depression and anxiety would not cause more than minimal work-related limitation (Tr. 66).

The ALJ found no limitation in activities of daily living and mild limitation in social

functioning or, concentration, persistence, or pace (Tr. 67).   He concluded that Plaintiff

retained the Residual Functional Capacity ("RFC") for light work with the following

additional limitations:

> [S]he can lift and carry twenty pounds occasionally and ten pounds frequently;
> stand or walk for six out of eight hours; and sit for six out of eight hours.  The
> claimant can occasionally push and pull.  She can occasionally climb, balance,
> stoop, kneel, crouch, and crawl.  The claimant requires the use of a cane for
> ambulation as needed.  She requires the option to stand and stretch when she
> is not busy and during regular breaks.  The claimant cannot have concentrated
> exposure to respiratory irritants, temperature extremes, and humidity (Tr. 69).

Citing the VE's job findings, the ALJ found that Plaintiff could perform her former work as

a telephone operator (Tr. 42, 73).

The ALJ discounted the claims of limitation, citing Dr. Arshad's findings that the short-lived memory problems were attributable to overuse of psychotropic medication (Tr. 67). The ALJ noted that psychologist Dr. Simkins-Bullock found that Plaintiff's "impaired auditory and delayed memory" during testing was attributable to "underlying depression and anxiety" (Tr. 67). The ALJ noted further that following a change in medication, Plaintiff reported an improvement in memory (Tr. 67).

In support of the credibility determination, the ALJ cited Plaintiff's fairly wide range of daily activities which included housework, using a computer, taking her mother to doctors' appointments, and visiting with family members (Tr. 70). The ALJ noted that Plaintiff reported to her care providers that she was "doing well" following post-knee surgery physical therapy (Tr. 70). The ALJ cited July, 2013 pulmonary records showing a diagnosis of mild COPD with significant improvement following bronchodilator treatment (Tr. 71). The ALJ cited September, 2014 treating notes showing that the condition of asthma was stable (Tr. 71).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401,

91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has

the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  The Vocational Testimony

 Plaintiff contends first that the RFC for a limited range of exertionally light work does not reflect her full degree of physical limitation. *Plaintiff's Brief* at 4-6, *Docket #14-1,* Pg ID 934.  Specifically, she takes issue with the RFC modifier that she "requires the option to stand and stretch when she is not busy and during regular breaks." *Id.* at 5 (*citing* Tr. 69).  She cites the VE's testimony that the need to change position for even five minutes an hour would preclude the work of a telephone operator.  *Id.* (*citing* Tr. 42-43).

 Plaintiff is correct that a VE's testimony constitutes substantial evidence. *Ealy v. CSS*, 594 F.3d 504, 516 (6th Cir.2010); *Varley v. Commissioner of HHS*, 820 F.2d 777, 779 (6th Cir.1987);  *see also Teverbaugh v. CSS*, 258 F.Supp.2d 702, 706 (E.D.Mich.2003)(Roberts, J).  The ALJ is not required to use VE testimony in making the Step Four determination. *Studaway v. HHS*, 815 F.2d 1074, 1076 (6th Cir.1987); *Mays v. Barnhart,* 78 Fed. Appx. 808, 813–814, 2003 WL 22430186, *4 (3rd Cir. October 27, 2003) ("At step four of the sequential evaluation process, the decision to use a vocational expert is at the discretion of the ALJ").  Although the use of a VE is optional in making a Step Four finding, "the propriety of the

hypothetical question ... is a proper concern for the Court, since it may furnish relevant information that the ALJ may consider in determining whether the plaintiff could do her past work." *Merkel v. CSS*, 2008 WL 2951276, *4 (E.D.Mich. July 29, 2008) (Lawson, J.)(citing 20 C.F.R. § 404.1560(b)).

Because in this case, the ALJ stated explicitly that she relied on the vocational testimony in making the Step Four finding, a review of the vocational testimony is warranted (Tr. 73).   The VE testified that the need to stand for even five minutes each hour would preclude Plaintiff's former job of telephone operator (Tr. 43).   The VE found that the job of telephone operator would allow the hypothetical individual to stand during a 15-minute break every two hours and during a 30-minute lunch break (Tr. 44).   He found that the individual would be able to stand during "unpredictable" times when fewer calls came through (Tr. 45).

As a threshold matter, the ALJ's finding that Plaintiff could perform her past relevant work despite the need to stand and stretch during regular breaks and during unpredictable lulls in activity is directly supported by the VE's testimony (Tr. 41-45).   Despite the VE testimony supporting the RFC, Plaintiff argues, in effect, that the limitation of standing and stretching only during regularly scheduled breaks and sporadic lulls in activity was crafted to avoid a finding of disability. *Plaintiff's Brief* at 5-6.   She notes that before testifying that standing during scheduled breaks and during lulls in activity would allow for the operator job, the VE testified that the need to stand during the work period for 10 minutes and later, five minutes each hour would preclude the telephone operator work (Tr. 42-43).

Plaintiff's implied argument that the RFC was "result oriented" is not well taken.  The ALJ's adoption of the VE's testimony given in response to a lessor degree of limitation is well supported by the record.   The ALJ noted that while Plaintiff complained of restless legs, she was able to sit through the hour-long administrative hearing without any problems (Tr. 69-71).  Thus, the conclusion that Plaintiff would be able to sit for two hours before taking a 15-minute break is not unreasonable.  The ALJ also cited treating records stating that Plaintiff's knee felt "fine" following the July, 2013 surgery (Tr. 70).  The ALJ observed that an EMG of the lower extremities was normal (Tr. 71).  Notably, in discussing the limitations found in the RFC, the ALJ credited Plaintiff's allegations to a limited degree, noting that "[i]n order to relieve pressure on affected joints, the claimant requires the option to stand and stretch when she is not busy and during regular breaks" (Tr. 72).    While Plaintiff argues that the need to stretch when she is not busy is "too vague," *Id.* at 6, the ALJ's finding that she was not required to stand at times other than the regularly scheduled periods and the unpredicted periods of low call volume is supported by both the VE's testimony and the transcript as a whole.

### B.  The Step Two Findings

Plaintiff argues next that the ALJ improperly downplayed work-related limitations resulting from depression, anxiety, and mild cognitive impairment.  *Plaintiff's Brief* at 6-9.  She disputes the ALJ's omission of depression and anxiety from the "severe" impairments at Step Two of the sequential analysis.  *Id.* at 9.

"[T]he second stage severity inquiry, properly interpreted, serves the goal of administrative efficiency by allowing the Secretary to screen out totally groundless claims." *Farris v. Secretary of HHS*, 773 F.2d 85, 89 (6th Cir.1985). "To determine that a claimant has a severe impairment, the ALJ must find that an impairment or combination of impairments significantly limits the claimant's ability to do basic work activity." *Rogers v. CSS*, 486 F.3d 234, 243, fn. 2 (6th Cir.2007); 20 C.F.R. § 416.920. An impairment can be considered "not severe ... only if the impairment is a 'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.'" *Farris*, 773 F.2d at 90 (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.1984)); 20 C.F.R. § 404.1520(c)(non-severe impairment is one which does not "significantly limit [the] physical or mental ability to do basic work activities.").  So long as "an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two 'does not constitute reversible error.'" *Fisk v. CSS,* 253 Fed.Appx. 580, 583, 2007 WL 3325869, *4 (6th Cir.November 9, 2007) (*citing Maziarz v.HHS*, 837 F.2d 240, 244 (6th Cir.1987)).

The ALJ found that the conditions of "depression, generalized anxiety disorder, and mild cognitive impairment" did "not cause more than minimal limitation" in Plaintiff's "ability to perform basic mental work activities" (Tr. 66).  The ALJ cited Dr. Hampton-Aitch's non-examining conclusion that Plaintiff did not experience more than mild

psychological limitation (Tr. 66 *citing* Tr. 53-55*)*.  Standing alone, the non-examining conclusions constitute substantial evidence in support of the Step Two findings.  *See Brooks v. CSS*, 531 F. App'x 636, 642 (6th Cir. August 6, 2013)("[I]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources.").

In support of his finding that the mental conditions were non-severe, the ALJ acknowledged Dr. Simkins-Bullock's finding of delayed memory, but noted that subsequently, Plaintiff's cognitive symptoms were reduced with a medication change (Tr. 67).  The ALJ noted that Dr. Arshad's records showed "consistently . . . normal mini-mental status examinations" (Tr. 67).  The ALJ also noted that despite Plaintiff's allegations of disabling mental problems, she did not see a psychiatrist or attend counseling (Tr. 67).  Plaintiff testified that at her one-time neuropsychology evalution, Dr. Sempkins-Bullock informed her that mental health counseling was not warranted (Tr. 28).

 Further, the ALJ supported her finding of "no" limitation in activities of daily living by observing that Plaintiff was able to care for her personal needs, cook dinner, and have her grandchildren over for "sleep overs" (Tr. 67).  She found only mild limitation in social functioning based on Plaintiff's ability to get along with authority figures, attend church, dine out, interact with family members, and grocery shop (Tr. 67, 70).  The ALJ noted that her finding of only mild limitation in concentration, persistence, or pace was supported by Plaintiff's ability to attend church services, do jigsaw puzzles, read, play word games, and use

the computer for up to three hours each day (Tr. 67).  The ALJ also noted that Plaintiff had not experienced any episodes of decompensation (Tr. 67).

Plaintiff also argues that the ALJ erred by rejecting Dr. Oliver-Brannon's consultative finding of "depressed affect and impaired recent memory" (Tr. 72).  However, the ALJ permissibly rejected Dr. Oliver-Brannon's conclusion on the basis that it contradicted the consultative examiner's own observations of mostly mild psychological limitation (Tr. 72). My own review of Dr. Oliver-Brannon's findings shows that Plaintiff exhibited clear speech, a normal memory, and a lack of psychotic symptoms (Tr. 360).  Although the ALJ's findings regarding Dr. Oliver-Brannon's findings do not require additional discussion or support, I note that while Dr. Oliver-Brannon was engaged to evaluate Plaintiff for psychological symptoms, a substantial portion of her findings (including the GAF of 48) make note of the physical limitations (Tr. 359-362).  Significantly, the examination occurred in the early stages of Plaintiff's recovery from knee surgery (approximately 14 days following surgery) and it appears that the consultative observations of significant physical restriction reflect temporary rather than long-term limitations (Tr. 327-328, 359-362).

Accordingly, the ALJ's Step Two findings do not warrant remand.

**C.  The Credibility Determination**

In her final argument for remand, Plaintiff disputes the ALJ's determination that her claims were not credible.  *Plaintiff's Brief* at 8-11.  She argues that the ALJ improperly relied on activities performed on a rare or sporadic basis to support the non-disability finding.  *Id.*

Plaintiff is correct that a claimant's ability to perform household chores and other activities on a intermittent basis does not equate with the "ability to engage in substantial gainful activity." *Walston v. Gardner,* 381 F.2d 580, 586 (6th Cir. 1967); *See also Rogers v. CSS*, 486 F.3d 234, 249 (6th Cir. 2007). However, the ALJ relied primarily on Plaintiff's regular rather than intermittent activities in finding that her allegations of disability were not entirely credible. The ALJ cited Plaintiff's acknowledgment that her regular activities included housework, meal preparation, attending church, and occasionally accompanying her mother to doctors' appointments (Tr. 70). The ALJ noted that despite Plaintiff's allegations of disabling physical limitations, she told her treating sources following surgery that her knee problems had resolved (Tr. 70). He noted that an EMG of the lower extremities was unremarkable (Tr. 71).

Moreover, the ALJ did not err in finding that Plaintiff's claim of significant cognitive problems was also undermined by the record showing that she was able to do visit with family member regularly, do jigsaw puzzles, read, play work games, and use the computer several hours a day (Tr. 70). She also scored 30 out of 30 on a memory test. "'An ALJ may ... consider household and social activities engaged in by the claimant in evaluating the claimant's assertion of pain or ailments.'" *Cruse v. CSS*, 502 F.3d 532, 542–43 (6th Cir. 2007)(*citing Walters v. CSS*, 127 F.3d 525, 532 (6th Cir. 1997)). Because the credibility findings are well explained and well supported, the discretion generally allotted to an ALJ's credibility determination is appropriate here. *Cruse*, at 542; *Anderson v. Bowen,* 868 F.2d

921, 927 (7th Cir.1989) (citing *Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir.1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").

Because the determination that Plaintiff was capable of performing her past relevant work as telephone operator work is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For these reasons,  I recommend that Defendant's Motion for Summary Judgment [Docket #15] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #14] be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir.  1991); *United States v. Walters*, 638 F.2d 947 (6th Cir.  1981).   Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address, specifically  and in the same order raised, each issue contained within the objections.

s/R.  Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: June 5, 2017

**CERTIFICATE OF SERVICE**

I hereby certify on June 5, 2017, that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants.

s/Carolyn Ciesla
Case Manager to
Magistrate Judge R. Steven Whalen